IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

RILEY THORNOCK,
    Plaintiff,

v.                                                          Civil Action No. 3:25cv161

JES FOUNDATION REPAIR LLC, *et al.*,
    Defendants.

## OPINION

This matter comes before the Court on an amended complaint, (ECF No. 4), and two motions to appoint counsel, (ECF Nos. 8, 12), filed by the *pro se* plaintiff, Riley Thornock. On March 6, 2025, the Court granted Thornock's motion to proceed *in forma pauperis* and directed Thornock to amend his complaint. (ECF No. 2.) Thornock filed his amended complaint on March 24, 2025. (ECF No. 4.) The amended complaint asserts federal- and state-law claims against his former employer, JES Foundation Repair LLC ("JES"), "and related entities,"[1] alleging violations of federal and state law. (ECF No. 4, at 1, 10–14.) On April 14, 2025, Thornock moved to appoint counsel and to stay proceedings due to medical issues he experienced after a car accident. (ECF Nos. 8–9; *see also* ECF No. 12 (renewing request for counsel).) The Court granted the motion to stay in part and stayed the proceedings until May 16, 2025. (ECF No. 10.)

That date having now passed, the Court lifts the stay and will consider the substance of Thornock's allegations. Thornock's only purported federal claim lacks merit, and the Court declines to exercise supplemental jurisdiction over his state-law claims. Appointing counsel to

---

[1] In his original complaint, Thornock raised claims against JES; Groundworks Operations, LLC; Matt Malone; and Nick Feaster. When the Court ordered an amended complaint, it directed Thornock to include a list of the defendants and their addresses in the first paragraph. (*See* ECF No. 2, at 3.) Thornock failed to do so, but he later filed an "addendum for compliance and clarification" that lists the defendants and their addresses. (*See* ECF No. 6, at 2–3.)

represent Thornock would not change this outcome. Accordingly, the Court will deny Thornock's motions to appoint counsel and dismiss this case.

## I. BACKGROUND

### *A. Factual Allegations*

Thornock moved from Texas to Virginia to work for Groundworks Operations, LLC ("Groundworks") as a sales representative, "where his earnings were directly tied to lead distribution and commission payments." (ECF No. 4 ¶¶ 4, 11.) Groundworks's job postings, recruitment materials, and internal compensation structures, however, "misrepresented earning potential" and "falsely led [Thornock] and other employees to believe that they would receive fair access to sales leads and be able to earn commissions based on an objective system." (*Id.* ¶¶ 5–6.) During the recruitment process, the hiring manager, Logan Lymke, "guaranteed fair and consistent lead flow, a transparent commission structure, and an ethical, supportive environment." (*Id.* ¶ 11.) But when Thornock started, he discovered that Nick Feaster—a manager with "a known history of conflict and abusive tactics"—had replaced Lymke. (*Id.*) Lymke's brother, a top salesman in the company's Roanoke branch, "privately agreed that" salesmen received leads based on "bias of the manager" rather than merit, and many people "complained about . . . Feaster's abusive sales and management tactics." (*Id.* ¶ 12.)

Once Thornock started, Feaster mocked him despite Thornock's "strong performance," "saw him as a threat," and "suppressed [Thornock's] leads" to justify firing him. (*Id.* ¶ 13.) Groundworks's business model relies on this behavior: luring new hires with "inflated earnings potential" and then "depriv[ing] [them] of meaningful leads and push[ing] [them] out before backend commissions accrue." (*Id.* ¶ 14.) In addition, sales representatives had to use their personal vehicles to drive between leads in state-wide territories "without adequate

2

reimbursement," which further reduced actual earnings and exploited the sales representatives. (*Id.* ¶ 15.)

Thornock's work conditions caused his mental health to suffer. (*Id.* ¶ 16.) When Thornock disclosed his mental health issues to Groundworks, he "faced increased pressure and public humiliation." (*Id.*) Flynn Cochran, a Groundworks employee speaking on behalf of CEO Matt Malone, "responded dismissively" by telling Thornock to "[g]et [his] head right, get [his] life stable[,] and reach back out brother." (*Id.*) Then, instead of punishing Feaster for his abusive tactics, Malone and Groundworks promoted Feaster and terminated Thornock. (*Id.* ¶ 18.) His termination left him "financially devastated" and "forced [him] to sell property and take low-wage jobs." (*Id.* ¶ 17.) Since his dismissal, he has "ranked among top performers in a similar sales role" and reached "200% average sales to goal for the entire year." (*Id.* ¶ 19.)

### B. Procedural Background

Thornock previously filed a case against JES and Groundworks in the Western District of Virginia,[2] alleging violations of the Americans with Disabilities Act ("ADA") and state law. *See Thornock v. JES Found. Repair*, No. 7:23-cv-00638, 2024 WL 1739755 (W.D. Va. Apr. 23, 2024). The court dismissed the ADA claims in Thornock's amended complaint for failure to state a claim and declined to exercise supplemental jurisdiction over his state-law claims, while giving him leave to amend. *Id.* at *9–10. Instead of amending, Thornock moved for reconsideration several times, which the court denied. *See, e.g., Thornock v. JES Found. Repair*, No. 7:23-cv-00638, 2024 WL 1828745, at *2 (W.D. Va. Apr. 26, 2024).

---

[2] "[F]ederal courts, in appropriate circumstances, may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue." *Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1239 (4th Cir. 1989) (quoting *St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Co.*, 605 F.2d 1169, 1172 (10th Cir. 1979)).

Thornock subsequently filed suit in this Court, bringing no formal claims under federal law, but again asserting factual allegations about purported ADA violations. (ECF No. 3, at 34–35.) The Court directed Thornock to amend his complaint and explain why his case belongs in federal court. (ECF No. 2, at 2.) In his amended complaint and as clarified in a subsequent "Memorandum of Legal Significance," Thornock submits one federal claim under the Federal Trade Commission Act ("FTC Act"). (ECF No. 4, ¶¶ 1, 28-34; ECF No. 6, at 1–2.) Thornock's eleven other claims arise under state law.[3]

Weeks later, Thornock moved to appoint counsel and stay the proceedings in this case. (*See* ECF Nos. 8–9.) Thornock explained that he had gotten into a car accident and suffered a head injury five days before filing his amended complaint. The Court stayed the proceedings through May 16, 2025, and withheld ruling on the motion to appoint counsel. (*See* ECF No. 10.) After that date passed, Thornock filed a second motion to appoint counsel, again asserting that his "spinal and neurological injury . . . continues to limit his ability to manage litigation effectively." (ECF No. 12, at 3.)

## II. STANDARD OF REVIEW

### A. *Failure to State a Claim*

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Courts must liberally construe *pro se* complaints. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). "Principles requiring generous construction of *pro se* complaints are not, however, without limits." *Beaudett*

---

[3] While some of these claims could be interpreted as similarly arising under federal law, Thornock expressly makes clear that they are state law claims. (*See* ECF No. 4 ¶ 2.) For example, Thornock mentions the ADA in raising his retaliatory termination claim but clarifies that he does not intend to assert an ADA claim. (*See id.* at 1; *id.* ¶ 44.) The Court, therefore, interprets Thornock's complaint as raising one federal claim under the FTC Act and the remaining claims under state law.

4

*v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). "Though these litigants cannot, of course, be expected to frame legal issues with the clarity and precision ideally evident in the work of those trained in law, neither can district courts be required to conjure up and decide issues never fairly presented to them." *Id.* at 1276. With these principles in mind, a court "shall dismiss" an action filed *in forma pauperis* "at any time if the court determines" that the action "fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

"The standards for reviewing a dismissal under § 1915(e)(2)(B)(ii) are the same as those for reviewing a dismissal under Federal Rule of Civil Procedure 12(b)(6)." *De'Lonta v. Angelone*, 330 F.3d 630, 633 (4th Cir. 2003). Under this standard, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Short v. Harman*, 87 F.4th 593, 603 (4th Cir. 2023) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Courts must accept all allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *See Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009). Courts need not, however, accept the veracity of conclusions or threadbare recitals of the cause of action's elements. *Iqbal*, 556 U.S. at 678.

### B. *Motion to Appoint Counsel*

"The court may request an attorney to represent any person unable to afford counsel" in a civil case. 28 U.S.C. § 1915(e)(1). Appointment of counsel "is a privilege and not a right." *Bowman v. White*, 388 F.2d 756, 761 (4th Cir. 1968). Still, a district should appoint counsel if "the case presents exceptional circumstances." *Jenkins v. Woodward*, 109 F.4th 242, 247 (4th Cir. 2024). Such circumstances arise when a plaintiff both "has a colorable claim" and "lacks the

5

capacity to present it" in light of his own cognitive abilities and the complexity of the claim. *Id.* (quoting *Whisenant v. Yuam*, 739 F.2d 160, 162 (4th Cir. 1984)).

### III. DISCUSSION

#### A. Failure to State a Claim

##### 1. Federal Claim

Thornock invokes the FTC Act in attempting to raise a federal claim for deceptive trade practices and wage suppression. As Thornock concedes, the FTC Act does not authorize a private right of action. *See A & E Supply Co. v. Nationwide Mut. Fire Ins. Co.*, 798 F.2d 669, 675 (4th Cir. 1986); *J.R. v. Walgreens Boots Alliance, Inc.*, No. 20-1767, 2021 WL 4859603, at *8 (4th Cir. Oct. 19, 2021); (ECF No. 4, at 2). He nevertheless asserts that "the factual and legal standards set forth by the Act are instructive in establishing that the [d]efendant's conduct constitutes deceptive and unfair business practices in the broader stream of commerce." (ECF No. 4, at 1–2.) He then invites the Court to "appl[y] those federal standards to conduct which gives rise to federal question jurisdiction under a theory of federal unfair competition and wage suppression impacting interstate commerce." (*Id.* at 2–3.)

In effect, Thornock asks the Court to create federal common law causes of action for unfair trade practices and wage suppression. But federal common law generally exists in just two limited instances: "[1] those in which a federal rule of decision is 'necessary to protect uniquely federal interests,' . . . and [2] those in which Congress has given the courts the power to develop substantive law." *Texas Indus., Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 640 (1981) (quoting *Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398, 426 (1964)). Like the federal government, states have a vested interest in protecting against unfair competition and wage suppression, as evidenced by the numerous states—including Virginia—that have their own unfair trade practices

6

laws. *See, e.g.*, Va. Code § 38.2-500, *et seq.*; N.C. Gen. Stat. § 75-1, *et seq.* And since the FTC Act does not provide a private cause of action, nothing indicates that Congress has authorized courts to develop substantive law in this area either. *See A & E Supply*, 798 F.2d at 675. Consequently, the Court must dismiss Thornock's FTC Act count for failure to state a claim.

### 2. *State Law Claims*

Having dismissed the only claim "over which it has original jurisdiction," and considering the early stage of this litigation, the Court declines to exercise supplemental jurisdiction over Thornock's remaining state law claims. 28 U.S.C. § 1367(c)(3); *see Kovachevich v. Nat'l Mortg. Ins. Co.*, 140 F.4th 548, 556 (4th Cir. 2025).

### B. *Motions to Appoint Counsel*

With the dismissal of Thornock's sole federal claim and the Court's decision not to exercise supplemental jurisdiction over his state law claims, Thornock's requests for appointment of counsel are effectively moot unless the Court allows him to amend his complaint. Considering Thornock has failed to state a valid federal claim—despite receiving numerous opportunities in multiple forums to do so—the Court sees little reason to provide Thornock with yet another chance to amend his complaint. *See United States ex rel. Nicholson v. MedCom Carolinas, Inc.*, 42 F.4th 185, 197 (4th Cir. 2022) (explaining that courts should not grant leave to amend where the amendment would be futile). But even if the Court were inclined to permit amendment, Thornock has not demonstrated exceptional circumstances warranting the appointment of counsel. *See Jenkins*, 109 F.4th at 247.

First, Thornock has failed to present a colorable federal claim. *See supra* Section III.A.1. And even if the Court assumes that Thornock presents colorable state law claims, it declines to

7

exercise supplemental jurisdiction over those counts. *See supra* Section III.A.2. This alone makes the appointment of counsel unjustified. *See Jenkins*, 109 F.4th at 247.

Second, considering the objective complexity of this case and his subjective abilities, Thornock has not sufficiently demonstrated that he lacks the capacity to present his claims. Courts may consider a wide array of case-specific facts—such as education level, legal knowledge, and access to legal materials and evidence—in evaluating a plaintiff's subjective ability to bring his claims. *See Jenkins*, 109 F.4th at 248. The Court recognizes, of course, that Thornock suffered a head injury days before filing his amended complaint. Other than raising a new claim under the FTC Act, however, Thornock sets forth claims that do not substantively differ from those he already tried to raise here and elsewhere before his accident.[4] Thornock's employment history and significant familiarity with the federal courts, as evidenced by the multiple cases he has brought here and elsewhere, also indicate that he possesses the intellect and access to materials necessary to effectively bring his claims. Thus, he is not "ill-equipped" to represent himself. *Id.* (quoting *Whisenant*, 739 F.2d at 162).

Courts similarly may look at a variety of case-specific factors in evaluating the objective complexity of a plaintiff's claims. Thornock argues that "the complexity of discovery, evidentiary standards, and workplace documentation place him at a significant disadvantage in litigating this case without counsel." (ECF No. 8 ¶ 4.) That may well be true for those advanced stages of litigation, but the pleading stage does not implicate those complex steps. Given that Thornock presents a rather straightforward employment dispute, the record fails to evince that this case's complexity exceeds his intellectual capabilities. *See Banks v. Gore*, 738 F. App'x 766, 772 (4th

---

[4] For example, Thornock appears to restyle the retaliation and hostile work environment and discrimination claims that he previously brought under the ADA, *see Thornock*, 2024 WL 1739755, at *7–9, as state law claims here, (*see* ECF No. 4 ¶¶ 2, 41–44), with the same underlying allegations giving rise to those claims in both suits.

8

Cir. 2018) (finding "no grave injustice in the district court's refusal to appoint counsel" where the case "was in the early stage of litigation—not at trial."). Exceptional circumstances justifying the appointment of counsel, therefore, do not exist.

## IV. CONCLUSION

For the foregoing reasons, the Court will dismiss Thornock's lone federal claim and decline to exercise supplemental jurisdiction over his state-law claims. (ECF No. 4.) The Court also will deny Thornock's motions to appoint counsel. (ECF Nos. 8, 12.)

It is so ORDERED.

Let the Clerk mail a copy of this Opinion to the *pro se* plaintiff.

Date: 22 July, 2025
Richmond, VA

/s/
John A. Gibney, Jr.
Senior United States District Judge